IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| NICHELLE VONDA MAY,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil No. 18-6145(RMB)<br><br>**OPINION** |

APPEARANCES:

SIRAGUSA LAW FIRM LLC
By: Lynette Siragusa, Esq.
62 Grove Street
Somerville, New Jersey 08876
    Counsel for Plaintiff Nichelle Vonda May

SOCIAL SECURITY ADMINISTRATION, OFFICE OF GENERAL COUNSEL
By: Katie M. Gaughan, Special Assistant U.S. Attorney
300 Spring Garden Street
Philadelphia, Pennsylvania 19123
    Counsel for Commissioner of Social Security

**RENÉE MARIE BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Nichelle Vonda May (the "Plaintiff") of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for social security disability benefits. For the reasons set forth below, the Court will **VACATE** the decision of the Administrative Law Judge (the "ALJ") and **REMAND** for proceedings consistent with this Opinion.

I.  **PROCEDURAL HISTORY**

On May 19, 2015, Plaintiff filed an application for supplemental security income pursuant to Title XVI of the Social Security Act (the "Act"). In her application, Plaintiff alleges disability, beginning November 9, 2014, based on severe major depressive disorder with psychotic features. Plaintiff also allegedly suffers from posttraumatic stress disorder ("PTSD"), anxiety, and has a history of substance abuse. Plaintiff's claim was initially denied on September 10, 2015, and again denied upon reconsideration on February 16, 2016. [Record of Proceedings ("R.P.") at 13]. On August 23, 2017, Plaintiff testified at a formal hearing before Administrative Law Judge Lisa Hibner. At the hearing, Plaintiff was represented by her attorney, Lynette Siragusa.

On October 26, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits, based on the ALJ's determination that "there are a significant number of jobs in the national economy which the claimant could perform." [R.P. at 31]. The Appeals Council denied Plaintiff's request for review on February 16, 2018, rendering the ALJ's decision as final. [R.P. at 2-4]. Plaintiff now appeals the Commissioner's final determination for this Court's review.

II. **STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir.

3

2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim

will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," she is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

## III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff is a 51 year-old female, but was 46 years old on the alleged disability onset date and 49 years old at the time of her hearing before the ALJ. Plaintiff attended some high school, but neither graduated nor earned a GED. Aside from two brief stints as a security guard and cashier in the early 2000s, Plaintiff has no work experience, let alone past relevant experience.

Plaintiff testified at the administrative hearing that many of her issues date back to her youth. Plaintiff was born to a 16 year-old single mother and was mostly raised by her grandmother. According to Plaintiff, her mother is emotionally, and sometimes physically, abusive. Plaintiff also has a son, however, she lost custody of him and he was living with Plaintiff's mother at the time of the administrative hearing.

### A. *Plaintiff's Medical History and Testimony*

As alleged in Plaintiff's application for benefits, Plaintiff suffers from a variety of mental impairments, including major depressive disorder, substance abuse disorder (allegedly in remission), anxiety, and PTSD. Plaintiff's medical records and testimony also indicate a history of

6

auditory hallucinations, self harm (cutting), and suicide attempts.

Plaintiff's substance abuse disorder relates to past use of crack cocaine, marijuana, and alcohol. According to Plaintiff, she has struggled with addiction since a neighbor introduced her to crack cocaine as a teenager. Despite Plaintiff's claim that her substance abuse disorder was in remission, Plaintiff admitted that she had relapsed and used crack cocaine less than a month before her administrative hearing.

Plaintiff sought mental health treatment in November 2014, when she was admitted to AtlantiCare Regional Medical Center for a psychiatric intervention after a suicidal episode. At the time of that episode, Plaintiff had recently relapsed and used crack cocaine after returning from an out-of-state drug rehabilitation program. [R.P. at 384]. Since 2014, Plaintiff has been treated for her depression and substance abuse through AtlantiCare Behavioral Health Providence House ("Providence House") and Adult Intervention Services. Generally, Plaintiff must attend treatment at least 3 days per week, totaling 15-20 hours.

Plaintiff's medical records indicate that her treatment has been plagued by drug relapses and poor attendance. However, Plaintiff reportedly made progress after she moved into "collaborative supportive housing," provided through Providence

7

House. Plaintiff made further progress after she signed an "attendance/behavior contract" with her treatment team, in which she agreed to regularly attend and participate in her treatment program.

Although Plaintiff made progress under the structure of her new housing arrangement and the attendance contract, Plaintiff continued to struggle with her mental illness. In June 2017, Plaintiff engaged in a verbal altercation with another group member at treatment. At various times, Plaintiff appeared "uninterested during groups," as evidenced by "falling asleep, eye rolling and inappropriate laughing at group discussion." [R.P. at 595]. In July 2017, Plaintiff once again relapsed and used crack cocaine.

On August 17, 2017, Dr. Lizbeth Smith, DrNP, of the Acute Partial Care Program, completed an evaluation of Plaintiff's mental impairments. [R.P. at 603]. Dr. Smith observed that despite medication and supportive psychotherapy, Plaintiff continued to display persistent symptoms, such as depressed mood, feelings of guilt or worthlessness, difficulty concentrating and thinking, distractibility, restlessness, irritability, and involvement in activities with a high probability of painful consequences. [R.P. at 604-605]. Dr. Smith evaluated Plaintiff's psychological residual functional capacity and found that she had marked limitations in

concentrating, persisting, or maintaining pace and adapting or managing herself, and moderate limitations in interacting with others and understanding, remembering, and applying information. [R.P. at 606]. According to Dr. Smith, Plaintiff would be unable to complete a normal workday and workweek without interruptions from psychologically based symptoms. [R.P. at 605].

### B. *The ALJ's Decision*

In her decision, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, from her alleged onset date through the date of the ALJ's decision. The ALJ found that Plaintiff suffers from severe impairments, but determined that she was not disabled under the Act.

At Step One of the sequential analysis the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the application date of May 19, 2015. [R.P. at 22]. At Step Two, the ALJ determined that Plaintiff's severe impairments were "a major depressive disorder, and a substance abuse disorder, allegedly in remission." [Id.].

At Step Three the ALJ determined that Plaintiff did not have an impairment that meets or is medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, noting that "when

Plaintiff worked at treatment, her symptoms tended to be controlled," the ALJ found that Plaintiff's impairments did not met the severity set forth in paragraphs B or C in section 12.00 of Appendix 1.

At Step Four, the ALJ determined as follows: that the Plaintiff:

> "After careful consideration of the entire record, the undersigned finds that claimant has the residual functional capacity to perform medium work, but with the following nonexertional limitations: she is limited to work involving only simple, routine tasks. She is limited to low stress jobs, defined as having only occasional decision making and only occasional changes in the work setting. She can do work which requires occasional judgment on the job. Finally, she can occasionally interact with co-workers and supervisors, and never interact with the public.

[R.P. at 24]. In making this decision, the ALJ considered "all symptoms to the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [R.P. at 25]. Significantly, the ALJ found that when Plaintiff worked at treatment, "her symptoms tended to be controlled and she made statements like 'Everything is going well' and 'everything is good' with 'no concerns.'" [R.P. at 29](internal citations omitted). Although the ALJ noted that various medical providers had opined that Plaintiff was disabled, the ALJ found Plaintiff's "activities of

10

daily living entirely consistent with an ability to perform unskilled, low stress work." home from work was merely a 'preference.'" [R.P. at 30].

At Step Five, based on testimony from a vocational expert, the ALJ found that Plaintiff could perform a variety of jobs that exist in significant numbers in the national economy, such as a compression molding machine tender, a bench press operator, or a bonder (semi-conductors). [R.P. at 30-31].

## IV. **DISCUSSION**

On appeal, Plaintiff argues that the ALJ's disability determination is not supported by substantial evidence because the ALJ failed to adequately consider the restrictions imposed by the mechanics of treatment and Plaintiff's need for a structured living environment. Plaintiff also argues that the ALJ failed to adequately explain her reasoning for rejecting the evaluation by Dr. Smith, one of Plaintiff's treating physicians. This Court agrees with Plaintiff.

First, Plaintiff argues that ALJ's RFC determination failed to consider whether Plaintiff's living environment and treatment program would allow her to engage in work on a "regular and continuing basis." Indeed, as outlined in SSR 96-8, an RFC assesses "an individual's ability to do sustained work-related

physical and mental activities in a work setting on a regular and continuing basis." Notably, a "regular and continuing basis" is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." See SSR 96-8. Furthermore, the RFC assessment must be based on all relevant evidence in the case record, including "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)" and the "need for a structured living environment." Id.

In this case, the ALJ did not consider whether the nature of Plaintiff's living environment and treatment program would allow her to work on a regular and continuing basis. In the ALJ's opinion, she noted that Plaintiff's medical records "show a record of ongoing management and evaluation with exacerbations and remissions in the claimant's condition." [R.P. at 29]. The ALJ acknowledged that the "exacerbations tended to correlate with not participating in treatment" and that her participation in her treatment program "appear[s] to mitigate the effects of her impairments." [R.P. at 29-30]. Despite the ALJ's recognition that Plaintiff's impairments are exacerbated without consistent treatment, the ALJ never addressed whether Plaintiff would be able to work while simultaneously attending her treatment program for 3 days and up to 20 hours each week during

12

regular business hours.  Given that Plaintiff's progress is dependent on consistent attendance at her treatment program, there may be a likelihood that entry into the workforce would disrupt Plaintiff's routine and contribute to a relapse.  The ALJ, however, did not address this issue.

The ALJ also erred by inferring that Plaintiff was able to work based upon her progress in a highly structured living environment.  Indeed, the ALJ found Plaintiff's "activities of daily living entirely consistent with an ability to perform unskilled, low stress work."  The ALJ observed that at Providence House, Plaintiff "is independent in dressing, bathing and grooming.  She does light cleaning and simple cooking.  She gets along with people such as healthcare providers and roommates.  She gets along with her caseworker, Ms. Ramirez, who works with her and provides supportive services.  She is able to actively participate in her treatment and make progress." [R.P. at 29-30].

Notably, all of the ALJ's observations that contributed to the RFC determination were drawn from behavior exhibited in a supported living environment or a treatment program.  "While these observations may be generally accurate, a claimant's ability to function within a structured hospital or treatment setting is not necessarily indicative of his ability to carry out basic work activities in a job setting on a regular and

13

continuing basis." Bennett v. Barnhart, 264 F. Supp. 2d 238, 255 (W.D. Pa. 2003). Indeed, the Third Circuit has noted that for a person suffering from a mental illness that is "marked by anxiety, the work environment is completely different from home or a mental health clinic." Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000). Therefore, without further explanation or support, this Court cannot find that the ALJ's RFC determination is supported by substantial evidence based purely upon the referenced daily activities in highly structured supportive living and treatment environments.

Second, Plaintiff argues that the ALJ improperly rejected Dr. Lizbeth Smith's opinion without sufficient explanation. In Morales, the Third Circuit held that "in choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Morales, 225 F.3d at 317. Furthermore, the "principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." Id. at 319.

Here, the ALJ acknowledged Dr. Smith's findings, but stated that "these opinions carry little weight because they are not

14

consistent with the preponderance of the evidence." [R.P. at 27]. Rather than citing to contradictory medical evidence, the ALJ supported her conclusion by referencing Plaintiff's daily activities at Providence House and statements Plaintiff made at appointments in September and October 2016 that "everything is going well" and "everything is good" with "no concerns." [Id.] As previously noted, the ALJ erred in making inferences about Plaintiff's ability to work based purely upon activities in a highly structured living and treatment environment. Furthermore, a review of Plaintiff's medical record in its entirety demonstrates that the referenced quotes, cited multiple times in the ALJ's opinion, are taken out of context and fail to accurately capture Plaintiff's wellbeing. By October 17, 2016, only a few weeks after Plaintiff made these statements, Dr. Smith reported that Plaintiff "present[ed] today with low self worth, low self-esteem, and battered woman syndrome at the hands of her mother" and that Plaintiff "reports sometimes at night she hears voices but cannot make out what they're saying." [R.P. at 555]. Dr. Smith also observed that Plaintiff "has childlike presentation, despite her being age 48 and denying any history of developmental delays." [Id.].

As the ALJ's opinion appears to be based upon out-of-context quotes and improper inferences drawn from Plaintiff's progress in a highly structured environment, this Court finds

15

that the ALJ's decision to reject Dr. Smith's RFC determination was not supported by substantial evidence.  Although this Court finds that the ALJ's opinion did not provide an adequate explanation for rejecting Dr. Smith's conclusions, the Court does not express an opinion as to whether the ALJ must adopt the findings from Dr. Smith's RFC evaluation.  On remand, the ALJ must address this issue, as well as consider the impact of Plaintiff's structured living environment and treatment program on her ability to work on a regular and continuing basis, pursuant to SSR 98-6.  The ALJ may reach the same conclusion on remand, but the appropriate analysis must be performed.

## V.    CONCLUSION

For the reasons set forth above, the Court will **VACATE** the ALJ's decision and **REMAND** for proceedings consistent with this Opinion.  An appropriate Order shall issue on this date.

DATED: May 31, 2019

                                           s/Renée Marie Bumb
                                           RENÉE MARIE BUMB
                                           UNITED STATES DISTRICT JUDGE